Lucie Inman, Plaintiff Appellant, Vincenza Bubak with me today, also representing the appellant, but not arguing, is my partner, Trenton Kashima. And I'd like to reserve five minutes for rebuttal. Okay. Watch your clock, please. I'm sorry? Watch your clock. Oh, yes, I will. Thank you. I'm so sorry. This case is about food labeling that misleads and confuses. Well, it's about preemption. It is about preemption. You know, we're at the pleading stage. Okay. You don't need to convince us that the other side did a bad thing or didn't do a bad thing. No, I don't need to get into that. But I do want to point out that because this is about implied disease claims, the facts and the legal issues before this Court are virtually identical to those reviewed in Davidson v. Sprout. The only difference is that Davidson concerned baby food labeling. This case concerns food supplement labeling. And in both of these cases, consumers claimed that they were economically harmed by inherently deceptive labeling that's prohibited by California's Here's the problem that I have, is if Nexus said one thing and then Davidson is, like, threading a needle. So if Davidson is the law of the circuit, then I'm inclined to say, okay, something survived. If Nexus is the law of the circuit, that as Judge Droz, when it came back to him, said, okay, reversed and said you lose. I am having a hard time. Nexus is first. A three-judge panel cannot overrule, as you know, a prior three-judge panel. So unless Davidson has threaded that needle in a way that it followed Nexus and they can both be reconciled, I'm having trouble here determining what, there's certainly a tension. There's certainly a tension. And for me, for you to prevail at this stage would have to show me that I can follow Davidson. If I can't reconcile the two, then I would think that our en banc court would have to tell us what is the law of the circuit. So that's where I'm struggling, and I'm not completely satisfied at this point that there's a way to reconcile. So I'm, that's where I am. Let me see if I can help with that.  Davidson expressly distinguishes. Yeah, but what if we don't buy the distinction? I mean, I can't, I went back and looked at the pleadings in Nexus. You tried to distinguish. Yeah, tried to distinguish. And this gets back to Judge Callahan's point. It may lead me to a different result, but I want to, let's assume for a moment. After all, I think Judge Schroeder does as good a job of trying to distinguish Nexus as you possibly can. Let's assume I don't buy it. Let's assume I think both cases involve the same issue and come to differing results. My question for you is, what do we do under that circumstance? One thing we can do is issue an initial en banc call, as your friend suggests. But we know that the en banc call failed last time. Are we obligated to say, well, whether or not I believe the distinction is correct, I'm required to follow Davidson, which makes a distinction, and it's up to somebody else to throw out that distinction. Or do we go, as Judge Callahan I think was suggesting, back to Nexus? See, my inclination is to think that if they conflict, we're sort of under a LIFO rule. We're bound by the last one. Well, there's another rule, however, that says when the second case, like Davidson, distinguishes the earlier case. And, yes, you may not buy that. I'm hoping to persuade you that it is totally distinguishable. But even if you do not buy that, I believe this Court is bound. Tell me what case says that. I cannot cite the issue. You just told me there was a rule. You must have some sense of the provenance of the rule. Yes. And if we accept that, then the last one gets to be the final say every single time, whether they. . . No, it doesn't. Because we can't overrule a prior. And if I just say I am not overruling the prior one and I'm distinguishing it, but I don't do a good job and it's clearly not, just because I'm last doesn't make me final. When you're the Supreme Court, that's true, but not with me. I also think that when the last case doesn't even address the earlier case, right, doesn't even address a distinction, just mows over it, that is an easier decision. But if I can try to point out the differences between Davidson and Nexus and this case and Nexus. . . Well, let me tell you what my difficulty is with that position so you can address it directly.  The claim in Nexus was a violation, a Sherman Act violation, Sherman law violation, premised on a violation of the Federal Druid FDCA. I can go back and look at the complaint in Nexus. It says that. The complaint in your case is a Sherman law violation premised on a violation of the FDCA. I'm not sure I need to go farther than that. I mean, I'm sure they involve different facts and they involve different violations of the FDCA, but so what? Well, if I could point out that the provisions of the FDA, FDCA that Nexus addressed were provisions for drugs under a whole different section of the FDCA than provisions. . . But the preemption provision applies to both sections. But unlike the drug sections, the food labeling sections provides an express preemption provision that focuses specifically on food labeling claims. It's somewhat analogous to the express preemption provision for medical devices. So that is a distinction for that language, for Congress expressed its intent in that language to treat food labeling claims differently from drug labeling claims. To say that there is no difference would render Section 341, 343.1 just surplusage. No, it wouldn't. Because what 341 says is that states may pass laws that are consistent with the FDCA. And nobody doubts that states may enforce laws consistent with the FDCA. The question is whether there's a private cause of action. So it doesn't render that. . . That's one of my problems with Davidson. It doesn't render that provision superfluous. It just means that states may pass those laws. It doesn't answer the question of implied preemption. Well, Section 6 of the Nutrition Labeling Education Act expressly provides that 343-1, quote, shall not be construed to preempt any provision of State law unless such provision is expressly preempted under what became 343-1. So that's another express preemption provision that you don't see in — you certainly didn't see it in Nexus. Nexus didn't have the first step, which was the we're going to preempt laws that are not identical to it. And it sure didn't have the second step of saying it shall not be construed to preempt any provision of State law unless it's expressly preempted here. And Davidson pointed out other decisions in which. . . Scalia, isn't the 341 provision about preempting inconsistent State laws? That's different than whether or not there's an implied preemption in the Act, which the Supreme Court has said there is, of private causes of action. But the Supreme Court has never said that there's an implied preemption of Sherman Law claims for food mislabeling. It has never said that. And this Court. . . They might if we keep going. They might if we keep going. And I guess, you know, Judge Callahan, Judge Hurwitz, to also address your concerns about this conflict, of course, the defendant in Davidson petitioned for en banc review and said these cases are on a collision course. This has got to be resolved. This is a big problem. Not one judge on this Court requested rehearing of en banc. I wouldn't. . . I wouldn't put too much weight on that. Because if we. . . Sometimes we just don't.  We have three of us here. I. . . That if we said that that's what. . . You've got to straighten this out. It would be a different situation. But other circuits, too, are. . . While not binding on us, we always look. And I don't know that the other circuits help you that much. How do you distinguish this case from the First Circuit's recent decision into Croce? And the plaintiff in that case said lactate violated Section 343R6 because it claimed to treat lactose intolerance. Plaintiffs brought her claim under Massachusetts state law for deceptive trade practices. The First Circuit held that the claim was impliedly preempted. So I see that. . . I know you try to distinguish it, but I see that case is not. . .  Hard for you. I think there's. . . And we did argue to distinguish that in our reply brief, but there's a further reason that we didn't mention in the reply brief. And that is Massachusetts, unlike California, does not have state food labeling laws that incorporate the FDCA. States are allowed to, and 343 says states can. . . You can have laws as long as they're identical to the federal laws. But Massachusetts legislature didn't even pass that kind of law. Well, I have no doubt that California favors your position. But that being said, the preemption issue is ultimately going to be a federal preemption issue. I understand. On a federal level. What was dispositive to the First Circuit in Dicrocci was that Massachusetts did not have a state law to stand on. It was basing that claim was based on a violation of the FDCA only. Isn't that true in your case? If Congress tomorrow, or make it two years ago, because I don't want to worry about retroactivity, took out the provision of the FDCA that you're concerned about, you would have no claim, right? If Congress took it out. . .  If Congress took it out. . . I believe the provision that you say was violated. You would have no claim. I would say. . . Your claim depends entirely on the existence of the FDCA. My claim depends on. . . You would have no Sherman Law claim if there was no FDCA claim, correct? You would. And here's the difference. Okay. Here's the difference. You would have a California state claim even if the FDA never existed. A Sherman Law claim? A Sherman Law. For a violation. . . Your claim in this case, at least the claim in front of us, is that there's a Sherman Law violation because the Sherman Law incorporates by reference the FDCA, and there was an FDCA violation. That's a fair summary, right? That's a fair summary, yes. Okay. So I'm asking you to, hypothetical, this isn't a fact, to assume that Congress removed that provision of the FDCA that you rely on. Then you would have no Sherman Law claim, would you? Yes. The Sherman Law would then be amended just as it was amended. . . Okay. I get to make up the hypotheticals. You don't get to say. . .  Then California would amend the Sherman Law to stick this back in. I'm. . . You would say California has historically, has historically protected consumers against food. . .  . . . .          Correct?  And that's because in 343-1, Congress told States. . . And we've talked. . . . . you have to do it this way. Well, let me ask you one other question. There's a cert petition pending in Texas, Davidson, one of the two. Davidson, yes. One of the two. Shouldn't we wait for the Supreme Court to act on that before we do anything? I don't believe so, and here's why. So, wait, no. Really? If the Supreme Court grants cert on the issue in that case, we should preempt them and rule beforehand about how they should come out? If the Supreme Court grants cert. . .  Grants cert, yes, I agree. So shouldn't we wait until we see whether they do or not? Here's why I don't think you should, because I think the decision in this case that illuminates the very, very significant distinctions between the claims in Davidson and the claims in Nexus, that will clarify the law while we're waiting to see if this. . . So you want us to teach them? I do think that the United States Supreme Court learns from your decisions. But I think both of you want to win now and then win or lose later, but. . . I appreciate your tenacity, but this is an easy one for me. We wait for the Supreme Court. Well, I appreciate that. The text, Congress's intent is what's key to preemption cases, and Congress has expressed its intent in 343-1 and also in the Nutrition Labeling Education Act by providing, again, unless it is expressly preempted here in this section of the FDA about food mislabeling, it is not going to be preempted. All right, Counsel. You haven't held on to your five-minute rebuttal, and now you're over. Thank you very much, and I will save my time. And thank you very much. You don't have any time to save. Oh, I'm sorry, one minute. Okay. Very well. Oh, all of it. Okay, well, thank you very much. I appreciate it. She might give you time, though. It's okay. It's okay. Your Honors, may it please the Court, I'm Tacey Flinch for Golo. Good morning. Thank you. Good morning. Let me start with the question of Davidson versus Sprout. Excuse me, Davidson versus Nexus. Let me pose, because maybe Judge Callan and I have a slightly different initial cut on this. Here's my problem for you to solve. We don't know if we do. Yeah, we don't know, but at least our questions suggest maybe. Davidson, if Davidson is the law, you lose, do you not? Respectfully disagree. Okay, you're going to distinguish Davidson, too. Tell me why Davidson doesn't kill your case. Well, Davidson, at this moment, is the law of the circuit, and so is Nexus, and our case falls under Nexus. Let me finish. Here's my problem. Davidson says we're not overruling Nexus, we're just distinguishing it. I may not be convinced by that, but as a three-judge panel, we have to accept, in my view, that decision. So assuming that Davidson's ruling is correct, which is that the claim in that case is preempted, notwithstanding Nexus. It's not preempted, notwithstanding Nexus, I'm sorry. Why can the claim in your case be preempted? Well, let me start by saying that if the panel concludes that Nexus cannot be reconciled with Davidson, then I think under this Court's case law, I believe the case is Antonio v. Ward-Grove, the Court is obligated to request en banc consideration. However, as Your Honor observed. Well, we're never obligated to request en banc consideration. We may request en banc consideration, but one of the reasons I resist that suggestion in this case is we have at least some prior history knowing that precisely the same argument was made to the en banc Court, made to the entire Court a little while ago when they awned. And so I'm not sure I want to expend our energy calling for en banc consideration in a case in which we already know it was turned down once before. As Your Honor observed, Davidson does state that it distinguishes Nexus. And, of course, it was obligated, the panel in that case was obligated to distinguish Nexus because no single panel can overrule another. And there's a clear difference between the claim that was deemed preempted in Nexus and the claim that was deemed not preempted in Davidson. And the difference relates to the FDA's involvement. So in our case and in Nexus, the claim is that there is a product that is being sold without FDA approval, in our case a dietary supplement, which FDA approval is not required before it is sold. In Nexus, it was a compounded drug where FDA approval is not required. And the plaintiff said, the reason this manufacturer believes FDA approval is not required is mistaken. I would like an opportunity to prove to the Court that, in fact, FDA approval is required. Well, I guess, but you try... I don't find your distinguishing Davidson and Nexus on the basis that Nexus plaintiffs alleged FDCA violations that turned on the defendant not getting governmental approval, whereas the plaintiffs in Davidson merely alleged violations of the FDCA labor loan requirements. I don't know, how is this distinction relevant for purposes of preemption? Didn't Buckman hold that a private party cannot bring suit to enforce violations of the FDCA full stop? And what does it matter that one violation turns on the defendant needing to get government approval? I'm just not finding that persuasive. Well, Your Honor, that is what Buckman held, and that is also the statement in Nexus... Is that your best argument? Is that your argument? I'm explaining how I think the Davidson court carved out a separate, small, threaded needle, as Your Honor said earlier, from Nexus. My reading of that case is, there was no FDA involvement required. That claim was about whether there was any nutrient... So you think the preemption doctrine turns on whether or not FDA involvement is required? That is a clear difference between... Well, I know it's a clear difference, but what case do you cite for the proposition that FDA... Other than these two cases, which you've, I think, quite ably tried to put in boxes, what case says FDA participation is required? Well, many cases refer to the importance of reserving the FDA's opportunity to exercise its discretion independently. And that is critical in order to ensure that... Well, but the FDA, in your case, has decided... What? Has it decided not to proceed? Has it done anything? I mean, there's no indication in this case that the FDA has exercised any discretion independently. There's no allegation about enforcement action?  The FDA is notified every time a dietary supplement is sold. Sure, but it may... All of its people got laid off last week for their opinions about diversity, equity, and inclusion, so they've decided not to proceed. I mean, we just can't read anything into... There's just anything into that. There's a prohibition in this case, an FDCA prohibition, which they say was violated. That's exactly what... Exactly what... In Davidson, the argument was you can't... There's an FDCA prohibition against you circulating this supplement without approval, and you violated that. Here, the argument is there's an FDCA prohibition on... For some reason, about putting this on the front of the baby food package as opposed to the back, and you violated that. Your Honour... But what's the difference? They're both premised on an underlying claim of an FDCA violation. The court in Davidson said, and I'm just taking the panel at its word here, the opinion says a claim that would require litigating whether the facilities, in that case a compounding facility, qualified for an exception to FDA approval, i.e. whether an FDCA violation had occurred, that a state law claim making that claim is preempted. So that is the law under Davidson. I take your point, and this goes back to my initial question. I may think Davidson is dead wrong, that its distinction doesn't work at all, but am I bound to accept its distinction because it is the decision of a three-judge panel? Your Honour, if the court concludes that Davidson is dead wrong, then because it... I might or might want to call it in bank, but put aside, that's an individual discretionary decision we get to make, and if we don't make it the way you like, you can petition for a hearing in bank. I'm asking what my duty is when confronted with a decision that distinguishes a prior case. I don't buy the distinction, but I can't say Davidson was wrong because it is a decision of a three-judge panel. So aren't I stuck with Davidson? Well, setting aside en banc, which you've asked me to set aside, the court can either accept the distinction in Davidson, under which we're clearly on the side of nexus because the words I just read describe the claim advanced against Golo. Okay, so your argument is that Davidson is in your favour? Do you think Davidson is wrongly decided? Of course it is not my position to say that. I do think that Davidson is in great tension. Well, people do that all the time in your position. They tell us we're wrong. It is. Yeah. I think it is challenging, as the panel has obviously recognized, to reconcile Davidson with nexus and with Buckman, which is a decision of the U.S. Supreme Court, which, of course, no panel nor the en banc court is permitted to overlook. Those cases say that when a state law claim says – there's a state law claim that a product violates state law solely because it violates the FDCA with no other content to the state law claim than it is preempted under Section 377, impliedly preempted. Okay, I'm going to understand your argument. Now I think I'm getting it. But your argument is that the Davidson distinction of nexus leaves nexus alive for your purposes. And that, therefore, there is preemption. Preemption, for sure. If Davidson is correct, then its distinction of nexus clearly applies to – But then, getting back to this case, what's the allegation in this case? The allegation in this case is that our product bears implied disease claims on the label, and that is not permissible for a product marketed as a dietary supplement. Under Section 101.93F, any time a dietary supplement bears disease claims, period, on the label, it is subject to regulation as a drug, which means that most likely it requires approval by the FDA. Your argument is that, in your case, further action by the FDA would be necessary. And that's a really important distinction. You are buying the distinction that Davidson utilizes. They distinguish nexus, saying this was a task reserved – because this was a task reserved for the FDA, we held that the claim was impliedly preempted. And you're arguing that there's one more step here that the FDA has to take, and therefore it's reserved for the FDA, and so, therefore, it's impliedly preempted. So you're buying their – you're saying, accepting their distinction of nexus. Okay. But you're saying you still win. Yes. We still win under Davidson. You're saying you still win no matter what. Well, if Davidson had not been decided, it would be a very simple question. Given that Davidson has been decided and its explanation of what is preempted under nexus, even after Davidson, then our claim is preempted even under Davidson based on its own description of what nexus holds. And I want to just briefly talk about – You want us to suspend disbelief. You want us to suspend disbelief and just say, here's what Davidson said, whether we agree with it or not. That's what they said, and your case is on a horse. Your Honor, it's the law of the Ninth Circuit that I'm, you know, doing my best to apply. Yeah, and I understand your position elsewhere that they're inconsistent. That's – I mean, you're allowed – at least in appellate arguments, you're allowed to do alternative pleading. Well, Judge Wardlaw, if I could expound a little bit on your question about how there's something still reserved for the FDA. I think there's an important difference here if we're trying to understand this distinction in nexus – excuse me, in Davidson. There's an important difference between the implied disease claim in our case and the baby food claim in Davidson. So what an implied disease claim is – what that means is that the label on a dietary supplement says that that product can be used to benefit a disease. And what is a disease? That's explained in Section 101.93G, the FDA's regulation. And the FDA has explained at great length how it decides what counts as a disease. In its final rule, which we cite, 60 Fed Reg 1000, it goes through a series of examples. So a disease is something that is dysfunction of the body. There are lots of things that are conditions that are – people seek treatment for, people don't – you know, they're unpleasant, but they're not diseases because they count as normal bodily functions. So examples that the FDA cites are premenstrual syndrome, occasional constipation, acne. These are things that people seek treatment for all the time, but they don't count as diseases as the FDA understands it. In that same federal regulation, it goes on to say if these conditions are severe or perpetual, then they may indicate a disease. So premenstrual dysphoric disorder, cystic acne, chronic constipation, those things count as diseases. So if your – if your label said, this cures chronic constipation, would we be in Davidson land or Nexus land? The point I'm making – No, I understand the point you're making. I'm asking a question. Let's assume your label says – The label says – Says this cures chronic constipation. Which maybe is a fair reading of the regulation. Then under the way I read the – Then it would just be like the label. It would be prohibited on its face by the act and no further determinations would need to be made, right? The FDA has already evaluated that issue. It has already exercised its expertise. Pick your favorite disease. Maybe I picked the wrong disease. I've accepted chronic constipation as the example, as odd as that is to say here in a federal court. But anyway, the point is that the FDA has already sort of done its work. And that's true of the baby food label here too. The FDA has said, we've thought about this. We've thought about potential nutrient claims on baby food labels. And we can say categorically no nutrient claims on a baby food product, period. We don't need to think about whether it's a good claim, a useful claim, none of that, just no nutrient claims. So the FDA has done its work. So if your label said, this cures brain cancer, your view is that this would fall into the Davidson exception?  Well, perhaps, yes or no? I mean, perhaps is, of course, where I started. I need you to push me to one side or the other. I mean, fundamentally, it's for the FDA to determine. So your answer is no? Your answer is it would fall in the Davidson exception. If the FDA has said, we, the FDA, determined that brain cancer is a disease, we, the FDA, determined that a statement saying this product treats brain cancer is a disease claim, that would be pretty similar to Davidson. That would be the same as Davidson. Not our case at all. What the plaintiff is asking for, and they've said this explicitly on page 20 of their reply brief, they're asking for a court or a jury to decide in the first instance whether our product claims are disease claims. Is insulin resistance a disease? As the FDA understands it, do the words on our product claim imply that our product will treat it? That's what they're asking a court or a jury to decide in the first instance. And to return to D'Aprocci, which you brought up, Judge Callahan, literally exactly the same thing was argued to the First Circuit there. That plaintiff said, we should be permitted to prove to a court that lactose intolerance counts as a disease so that a product saying this treats lactose intolerance has disease claims and is therefore subject to regulation as a drug. And the First Circuit said, no, that lacks merit. You don't get to argue to a court whether lactose intolerance counts as a disease because that is for the FDA to determine. Wouldn't there have to be a fact determined by the finder of fact in Davidson? I'm sorry, could you ask the question again? In Davidson, wouldn't there be a fact that had to be determined by the finder of fact? The only question that the court allowed to proceed in Davidson is, is there any statement at all about nutrients on this baby food packaging? Well, but see, typically, a jury would have to figure that out, right? Or a judge, or a finder of fact. So why is it any different than all the other cases? I think, as Nexus would describe it, that is still a state law claim of an FDCA violation. I think it is. I think under the most straightforward reading of Nexus, that would be preempted, obviously. The panel in Davidson disagreed. What's your response on the Supreme Court cases? Should we wait to see if they grant cert that Judge Hurwitz asked? I certainly have no problem with that. If they did grant cert, I certainly agree with counsel on the other side that it would be appropriate for the court to wait. I think it is clear that our case, assuming Davidson, assuming cert is not granted, assuming Davidson, there is no en banc consideration of this question, just as the court didn't grant en banc for a hearing of Davidson. Assuming none of those things happen, then our claim is preempted under Nexus and Davidson's description of what Nexus held. If Davidson went away, you win, right? Yes. Okay, so that's the point of waiting for cert. But you're saying you still win even if Davidson is. That is correct, under Davidson's. You both say you win no matter what, so I get that. That would be an argument for not waiting because we win under Davidson's description of Nexus. We understand, counsel, and you're well over your time. Thank you very much, Your Honors. I'm going to give your opposing counsel another minute or two to respond and same amount of time that you had going over, two minutes. Thank you very much, Judge Wardlaw. If we're waiting for the FDA approval of release, as my friend on the other side has suggested, looking at the complaint, there is no allegation that GOLO gave notice to the FDA that it intended to have implied disease claims. GOLO just, if you take the complaint, alleged allegations as true, GOLO has included these implied disease claims on the labeling without notifying the, we don't know one way or the other. It is like Davidson in that you can't say those things unless you go through the process. This isn't, we don't even, I have no idea if there would be a pending process because the complaint does not allege that. We are asking, on page 20 of our reply brief, for the reasonable consumer standard to be applied to decide if these are implied disease claims. Judges and juries have done that with no problem at all. We won't know, we won't know, I'm going to stop there. I think that is my main response. Oh, Decroce, I will say, Decroce didn't allege an implied disease claim. It didn't. It alleged lactate is a drug and it's being sold without approval. And they said we can't even, we don't even have an argument that the representations aren't true. Here, we're not alleging that the lease is a drug being sold without approval. There's one allegation in the complaint, and I think Judge Hurwitz, she mentioned claims in the alternative, sort of in the pejorative, that if it could do all the things it said, then it would be a drug. So with that, I will rest on our pleadings, and I thank your honors for considering this case. Thank you very much. Thank you, Pat. Bubeck v. Golo will be submitted, and this session of the court is adjourned for today. Thank you very much, counsel. All rise. This court for this session stands adjourned.
judges: WARDLAW, CALLAHAN, HURWITZ